LATHAM & WATKINS LLP
  Colleen C. Smith (CA Bar No. 231216)
  (colleen.smith@lw.com)
  Anastasia Pyrinis (CA Bar No. 352395)
  (anastasia.pyrinis@lw.com)
12670 High Bluff Drive
San Diego, CA 92130
Phone: 1.858.523.5400
Fax: 1.858.523.5450

LATHAM & WATKINS LLP
  Daniel R. Gherardi (CA Bar No. 317771)
  (daniel.gherardi@lw.com)
140 Scott Drive
Menlo Park, CA 94025
Phone: 1.650.328.4600
Fax: 1.650.463.2600

LATHAM & WATKINS LLP
  Tina Jensen (CA Bar No. 331764)
  (tina.jensen@lw.com)
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
Phone: 1.714.755.8125
Fax: 1.714.755.8290

*Attorneys for Defendants Vinod Khosla, Samir
Kaul, Peter Buckland, Khosla Ventures LLC,
and Khosla Ventures SPAC Sponsor II LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| FRANKIE J. ADAMO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NEXTDOOR HOLDINGS, INC., SARAH J. FRIAR, MICHAEL DOYLE, VINOD KHOSLA, SAMIR KAUL, PETER BUCKLAND, KHOSLA VENTURES LLC, and KHOSLA VENTURES SPAC SPONSOR II LLC, <br><br> Defendants. | Case No. 5:24-cv-01213-EJD <br><br> **KHOSLA DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT** <br><br> Date:      March 20, 2025 <br> Time:      9:00 a.m. <br> Courtroom: 4 <br> Judge:     Hon. Edward J. Davila |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 2

    A. Plaintiff's Abandoned Claims Must Be Dismissed With Prejudice ....................... 2

    B. Plaintiff Fails to State a Section 10(b) Claim Against the Khosla
    Defendants ............................................................................................................... 2

        1. Plaintiff Lacks Standing to Challenge Pre-Merger
        Statements ...................................................................................................... 3

        2. Plaintiff Fails to Adequately Plead a Materially False or
        Misleading Statement .................................................................................... 5

        3. Plaintiff Still Identifies No Compelling Inference of
        Scienter as to the Khosla Defendants ........................................................... 8

    C. Plaintiff's Amended Complaint Does Not Adequately Allege Loss
    Causation ................................................................................................................ 13

    D. The Amended Complaint Does Not State a Section 20(a) Claim) ....................... 13

    E. Dismissal With Prejudice Is Appropriate Here...................................................... 14

III. CONCLUSION................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) .............................................................................. 12

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
2024 WL 4505465 (N.D. Cal. Oct. 15, 2024)......................................................................... 9

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019) (Opp. ) .................................................................. 11, 12

*Cai v. Eargo, Inc.*,
2025 WL 66041 (9th Cir. 2025) ........................................................................................... 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ................................................................................................ 10

*Conservation Force v. Salazar*,
677 F. Supp. 2d 1203 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011) ...................... 2

*Costanzo v. DXC Tech. Co.*,
2020 WL 4284838 (N.D. Cal. July 27, 2020)......................................................................... 4

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 ....................................................................................................................... 11, 13

*Forman v. Meridian Bioscience, Inc.*,
367 F. Supp. 3d 674 (S.D. Ohio 2019) (issuer not "maker" of target's
statements in merger agreement attached as Form 10-Q exhibit), *granting
reconsideration on other grounds*, 387 F. Supp. 3d 791 (S.D. Ohio 2019) ............................ 6

*Garcia v. City of L.A.*,
611 F. Supp. 3d 918 (C.D. Cal. 2020) ................................................................................... 2

*Hampton v. Aqua Metals, Inc.*,
2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ...................................................................... 5

*Homsy v. Bank of Am., N.A.*,
2013 WL 2422781 (N.D. Cal. June 3, 2013) ......................................................................... 2

*In re CarLotz, Inc. Sec. Litig.*,
2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) ....................................................................... 5

*In re CCIV/Lucid Motors Sec. Litig.*,
110 F. 4th 1181 (9th Cir. 2024) ............................................................................... 1, 3, 4, 5

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2020 WL 3026564 (D.N.J. June 5, 2020) ............................................................................... 7

*In re Finisar Corp. Deriv. Litig.*,
    2012 WL 2873844 (N.D. Cal. July 12, 2012) ........................................................................ 8

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
    554 F. Supp. 2d 1083 (C.D. Cal. May 19, 2008) .................................................................. 6

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ........................................................................................... 2, 13

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ............................................................................................... 12

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) .................................................................................................... 1, 5, 6

*M & M Hart Living Tr. v. Glob. Eagle Ent.*,
    2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) ....................................................................... 6

*Mehedi v. View, Inc.*,
    2024 WL 3236706 (N.D. Cal. June 28, 2024) ....................................................................... 4

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
    54 F.4th 82 (2d Cir. 2022) .................................................................................................... 5

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
    2016 WL 6782768 (C.D. Cal. Aug. 9, 2016) ......................................................................... 6

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ............................................................................................... 14

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) ........................................................................................ 9, 12

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) .............................................................................. 13

*Red River Res., Inc. v. Mariner Sys., Inc.*,
    2012 WL 2507517 (D. Ariz. June 29, 2012) ....................................................................... 14

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ................................................................................................. 6

*SEC v. Todd*,
    642 F.3d 1207 (9th Cir. 2011) ............................................................................................. 13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................................ 8, 9

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

KHOSLA DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:24-CV-01213-EJD

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................................ 12

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................................................... 10

*Welgus v. TriNet Grp.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ....................................................................... 11

*Xu v. Gridsum Holding Inc.*,
    624 F. Supp. 3d 352 (S.D.N.Y. 2022) ..................................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .............................................................................................. 5, 14

**STATUTES**

15 U.S.C. § 78u–4 ........................................................................................................................ 8, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ...................................................................................................................... 5, 8

Rule 10b-5 ........................................................................................................................................ 5

## GLOSSARY

| Term | Definition |
|---|---|
| ¶ | Paragraph of the Amended Complaint |
| AC or Amended Complaint | Amended Class Action Complaint (Dkt. No. 65) |
| ARPU | Average Revenue Per User |
| CEO | Chief Executive Officer |
| Class Period | July 6, 2021 to November 8, 2022 |
| CW(s) | Confidential witness(es), which are referenced as "Former Employee(s)" or "FE" in the Amended Complaint |
| Ex. | Exhibits attached to the Declaration of Colleen C. Smith in Support of the Khosla Defendants' Motion to Dismiss (ECF No. 74) |
| Exchange Act | Securities Exchange Act of 1934 |
| Individual Defendants | Vinod Khosla, Peter Buckland, Samir Kaul, Sarah J. Friar, and Michael Doyle |
| Khosla Defendants | Vinod Khosla, Peter Buckland, and Samir Kaul, Khosla Ventures SPAC Sponsor II LLC, and Khosla Ventures LLC |
| Khosla Individuals | Vinod Khosla, Peter Buckland, and Samir Kaul |
| The SPAC | Khosla Ventures Acquisition Co. II, a special purpose acquisition company |
| Merger | Merger between the SPAC and Nextdoor Private, resulting in Nextdoor Holdings, Inc. |
| Mot. | Khosla Defendants' Motion to Dismiss (ECF No. 73) |
| ND Mot. | Nextdoor Defendants' Motion to Dismiss (ECF No. 71) |
| Nextdoor Defendants | Nextdoor Holdings, Inc., Sarah J. Friar, and Michael Doyle |
| Nextdoor Private | Nextdoor, Inc. |
| Opp. | Plaintiff's Opposition (ECF No. 76) |
| Plaintiff | Lead Plaintiff Keith Hollingsworth |
| Proxy | October 21, 2021 Proxy Statement/Prospectus issued to SPAC shareholders, as amended |
| PSLRA | Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.* |
| Sponsor | Khosla Ventures SPAC Sponsor II LLC |
| Statement No. | Refers to the numbered statements in the Appendix, attached to the Nextdoor Defendants' Motion to Dismiss, which lists each of the alleged misstatements and the basis for dismissal |

## I.    INTRODUCTION

Recognizing his Amended Complaint lacks merit, Plaintiff abandoned the vast majority of his claims, including the entirety of his Section 14(a) claim, and now challenges just a handful of alleged misstatements.  But despite Plaintiff's purported "narrow[ing]" of his case, Opp. at 3, the Opposition only underscores that the Khosla Defendants should be dismissed.  Plaintiff's Omnibus Opposition is essentially an opposition to the *Nextdoor* Defendants' Motion to Dismiss, with just a few stray references to the *Khosla* Defendants.  Plaintiff's claims against the Khosla Defendants should be dismissed with prejudice.

*First*, Plaintiff lacks standing under Section 10(b) to bring a claim for the two pre-Merger statements he still challenges.  These statements were about Nextdoor Private, but Plaintiff did not purchase or hold securities in that entity, and therefore lacks standing to challenge them.  The Ninth Circuit recently reaffirmed a bright-line rule rejecting standing in this very situation in *In re CCIV/Lucid Motors Sec. Litig.*, 110 F. 4th 1181, 1185 (9th Cir. 2024) ("*Lucid*").  Plaintiff seeks to avoid this binding precedent by arguing the statement about Nextdoor Private allegedly "impacted" his securities, but that is just another version of the "sufficiently connected" or "directly related" tests that the Ninth Circuit foreclosed in *Lucid*.

*Second*, even if Plaintiff had standing, he has not alleged that any of the Khosla Defendants "made" the challenged statements, as required under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("*Janus*"), much less that any of the challenged statements were false or misleading when made.

*Third*, even if Plaintiff had sufficiently alleged a false or misleading statement made by a Khosla Defendant (he has not), Plaintiff has not come close to alleging particularized facts demonstrating an intent by any Khosla Defendant to mislead shareholders.  Plaintiff does not allege how any individual Khosla Defendant knew of any *specific* facts undermining any challenged statement.  The Opposition does not even try to suggest a motive—particularly significant here, where the Khosla Defendants not only held onto their stock in Nextdoor, but purchased *more* shares after the Merger.

KHOSLA DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:24-CV-01213-EJD

*Lastly*, Plaintiff has not sufficiently alleged loss causation, including because Plaintiff has failed to sufficiently allege a connection between the stock drops and "the very facts" for which any Defendant allegedly "lied." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022). Any of these deficiencies *alone* are fatal to Plaintiff's Complaint.

## II. ARGUMENT

### A. Plaintiff's Abandoned Claims Must Be Dismissed With Prejudice

Plaintiff expressly abandoned his entire Section 14(a) cause of action, his "scheme liability" claim, and the majority of the statements he previously challenged under Section 10(b).[1] Opp. at 3 n.1. Abandonment of claims in an opposition brief warrants dismissal with prejudice of those claims. *Homsy v. Bank of Am., N.A.*, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) ("In instances where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice. Here, [plaintiff] does not address the claim (other than to say that he does not plan to pursue it). The court thus dismisses it (as alleged) with prejudice."); *see also Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived."); *Garcia v. City of L.A.*, 611 F. Supp. 3d 918, 933 n.17 (C.D. Cal. 2020) (failing to address challenge to certain statements warrants dismissal of those statements). Plaintiff cannot avoid this well-settled principle by purportedly reserving "all rights to amend the complaint to include additional claims and allegations." Opp. at 3 n.1.

### B. Plaintiff Fails to State a Section 10(b) Claim Against the Khosla Defendants

Even reading the Opposition broadly, only the following statements remain at issue:

- The statement in the July 2021 Investor Presentation that Nextdoor Private had "significant monetization potential" based on a comparison of its ARPU and U.S. daily

---

[1] Plaintiff does not address the following statements: ¶ 110 (the portion of the paragraph challenging the statement that Nextdoor Private's growth was "sustainable" and had a "[s]trong foundation for continued revenue growth"), and ¶¶ 112, 116, 118, 120, 122, 124, 126, 128, 130 (Statements 1, 4, 5, 6, 7, 8, 9, 10, 11).

active users (DAUs) with those of Twitter (k/n/a X) and Snap.  ¶ 110; Statement 1; *see also* Statement 3.

- Ms. Friar's statements about active users made on July 6, 2021, May 10, 2022, August 9, 2022 respectively.  ¶¶ 114, 132, 134; Statements 3, 12, 13.

Plaintiff does not have standing, however, to challenge these statements under Section 10(b) as to the Khosla Defendants.  Nor has he adequately alleged that any challenged statement was materially false or misleading, that any statement was made with an intent to deceive shareholders, and that any purported "corrective disclosure" actually corrected the challenged statements.  For these reasons, and the reasons stated in the Nextdoor Defendants' Reply, in which the Khosla Defendants join, Plaintiff has failed to state a Section 10(b) claim.

### 1.    Plaintiff Lacks Standing to Challenge Pre-Merger Statements

Under Section 10(b), only "purchasers and sellers of *the security about which* the alleged misrepresentations were made" may assert claims.  *Lucid*, 110 F. 4th at 1185 (reaffirming the bright-line "purchaser-seller rule" in the context of alleged misstatements made in advance of a merger).  *Lucid* is controlling and fatal to Plaintiff's claims.  Plaintiff neither purchased nor is alleged to have ever owned Nextdoor Private securities.  After abandoning nearly all of his challenged statements, the only pre-Merger statements Plaintiff still challenges (Statements 1, 3) were about *Nextdoor Private*, not KVSB.  *See* ¶ 110 (challenging statement that "*Nextdoor Private* had 'significant monetization potential' based on a comparison of its ARPU and U.S. daily active users ('DAUs') with those of Twitter (k/n/a X) and Snap"); ¶ 114 (challenging statement about "*Nextdoor* as a platform").

Plaintiff seeks to avoid this binding Ninth Circuit precedent by arguing *Lucid*, nor the Second Circuit case it followed, *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022) ("*Frutarom*"), "concerned the situation here—where Plaintiff is suing the acquiring entity, the same legal entity from which [he] purchased securities, for statements that acquiring entity made that impacted the value of its own securities."  Opp. at 24.  This argument fails on multiple grounds.

As an initial matter, Plaintiff has *not* sued the acquiring entity, Khosla Ventures Acquisition Co. II, which is the pre-Merger SPAC entity that traded under the ticker symbol KVSB. Plaintiff further muddies the record by claiming he "was a purchaser *of Khosla Ventures securities*," Opp. at 23 (emphasis added), but he defines "Khosla Ventures" as "Khosla Ventures LLC . . . a venture capital firm," ¶ 13. The venture capital firm is not the issuer from whom he purchased securities and is not the entity that filed the Form 8-K attaching the July 2021 Investor Presentation. *See* Dkt. No. 31-4. Plaintiff provides no authority to conflate legally distinct entities. *See, e.g., Mehedi v. View, Inc.*, 2024 WL 3236706, at *18 (N.D. Cal. June 28, 2024) (declining to "treat legally distinct entities as one"); *Costanzo v. DXC Tech. Co.*, 2020 WL 4284838, at *8 (N.D. Cal. July 27, 2020) (same).

*Lucid*'s holding is directly applicable to Plaintiff's claims because the statement was not *about* KVSB (and Plaintiff does not claim it was). *See* Mot. 6-7. Plaintiff's plea for an exception to *Lucid*, based on the argument the challenged statements "impacted the value" of the securities he held, merely rehashes arguments that the Ninth Circuit has already rejected. *Lucid*, 110 F.4th at 1186-87. *Lucid* affirmed the *Blue Chip* rule, which established that standing is determined by whether the plaintiff bought or sold the securities *about which* the misstatements were made, as a "bright line" rule—even in the context of SPAC transactions. *Id.* at 1187. The Ninth Circuit foreclosed alternative tests like "direct relationship" or "sufficient connection" because they would require a "case-by-case" analysis that contravenes the Supreme Court's bright-line purchaser-seller rule. *Id.* at 1186. Plaintiff's position is irreconcilable with *Lucid* and also ignores subsequent case law interpreting *Lucid* as rejecting Plaintiff's position: "Under *Lucid*, the relevant inquiry is not whether Plaintiff purchased a security that was *affected* by an alleged misrepresentation, but rather whether the purchased security was the *subject* of the misrepresentation." *Butala v. Owlet, Inc.*, 2024 WL 4560173, at *3 (C.D. Cal. Sept. 26, 2024).

Plaintiff's attempt to distinguish *Lucid* by arguing that he is suing "for alleged misstatements Khosla Defendants made in their own July 6, 2021 8-K," Opp. at 24, is irrelevant to the standing analysis. "[T]he question is whether Plaintiffs purchased or sold the securities *about which* Defendants' alleged misrepresentations were made." *Lucid*, 110 F.4th at 1187

(emphasis added). Therefore, "the relevant question for statutory standing is not which company Plaintiff is suing or which company 'made' the statement, but which company the statement is 'about.'" *In re CarLotz, Inc. Sec. Litig.*, 2024 WL 1348749, at *6 (S.D.N.Y. Mar. 29, 2024) (citing *Frutarom*). While the "maker" of the statement may be relevant to liability issues, "statutory standing concerns a different question: who is the proper plaintiff, not who is the proper defendant." *Id.*; *see also* Mot. at 6.

Finally, Plaintiff's policy arguments also fail. Whether SPAC transactions should be exempt from the purchaser-seller rule is a matter for Congress to decide, not the judiciary. *Lucid*, 110 F.4th at 1187 ("If Congress wants to treat SPAC acquisitions differently than traditional mergers, it has the authority to do so."). *Lucid* is binding precedent in this Circuit, and permitting Plaintiff's claims would contravene the Ninth Circuit's holding.

### 2. Plaintiff Fails to Adequately Plead a Materially False or Misleading Statement

#### a. Plaintiff Fails to Allege Any Khosla Defendant "Made" Any Challenged Statement

Plaintiff fails to adequately allege that the Khosla Defendants had ultimate authority over any statement Plaintiff still challenges, which is insufficient to adequately plead a Section 10(b) claim against them under *Janus*. Liability under Rule 10b-5 is limited to the "maker" of an alleged false or misleading statement—"the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 136. Generalized allegations do not suffice. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009); Fed. R. Civ. P. 9(b). Plaintiff alleges no fact suggesting that any Khosla Defendant had ultimate authority about any challenged statement, all of which concern Nextdoor.

*First*, three of the four statements Plaintiff challenges are oral statements made by Ms. Friar. The Khosla Defendants cannot be liable for those statements as a matter of law. *See* Mot. at 11; *see also, e.g.*, *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *18 (N.D. Cal. Nov. 16, 2020) (holding an individual defendant who was not the speaker of a statement made on

an earnings call cannot be liable for the statement); *M & M Hart Living Tr. v. Glob. Eagle Ent.*, 2017 WL 5635424, at \*12 (C.D. Cal. Aug. 20, 2017) ("[O]ral statements . . . can be attributed to the speaker only."); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1092 (C.D. Cal. May 19, 2008) (oral statements made by an individual cannot be attributed to other defendants).  Plaintiff does not dispute—and therefore concedes—this point.

*Second*, Plaintiff has not alleged that any Khosla Defendant "made" the challenged statement in the July 2021 investor presentation.  Ignoring *Janus* and its progeny, Plaintiff's Opposition falls back on the unspecified allegation that the "Khosla Defendants" are collectively responsible for the challenged statement in the July 2021 Investor Presentation as if each were a "maker" of the challenged statement just because the "Khosla Defendants" signed a Form 8-K to which the July 2021 Investor Presentation was attached and because Mr. Khosla spoke at the presentation.  Opp. at 16 n.1.  This argument fails for multiple reasons.

KVSB, the issuer that filed the Form 8-K containing the July 2021 Investor Presentation, is not a party.  *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011) ("As was fatal to plaintiffs' claims in *Janus Capital Group*, here only the Trust—not BPXA—bore a statutory obligation to file with the SEC.").  So Plaintiff's vague allegations that the Khosla Defendants are affiliated with KVSB are insufficient to establish liability under *Janus*.  Moreover, an issuer is not a "maker" of statements from someone else simply by filing an SEC document.  *See, e.g., Forman v. Meridian Bioscience, Inc.*, 367 F. Supp. 3d 674, 690-91 (S.D. Ohio 2019) (issuer not "maker" of target's statements in merger agreement attached as Form 10-Q exhibit), *granting reconsideration on other grounds*, 387 F. Supp. 3d 791 (S.D. Ohio 2019).

Even if Mr. Khosla "introduced" the presentation (Opp. at 16 n.4)—which is nowhere alleged in the Amended Complaint—that is insufficient to establish "maker" liability.  Without control, "a person or entity can merely suggest what to say, not 'make' a statement in its own right." *Janus*, 564 U.S. at 142; *see also Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, \*10 (C.D. Cal. Aug. 9, 2016) (defendant had not "made" a statement even when they were alleged to have provided a script and final approval for calls, provided extensive

input on how to frame issues, and participated in preparing materials for the call).[2]

### b.    Plaintiff Has Not Adequately Alleged Falsity

Even if Plaintiff had sufficiently alleged maker liability—which he has not—he has not adequately alleged that any alleged misstatement was actionably false or misleading when made. Plaintiff argues that Defendants misled investors into believing Nextdoor usership and growth would be the same as Twitter or Snap. Opp. at 9. But no Defendant ever said or suggested that. ND Mot. at 16.[3] And the similarities and differences between Nextdoor, which Plaintiff alleges people used for tasks like "like finding a plumber," ¶ 25, and apps like Twitter and Snap are something investors would know for themselves, ND Mot. at 13. Indeed, it was Defendant Friar who stated during an earnings call in March 2022: "People are coming looking for the plumber. They're looking for maybe someone to help them do their gutters in that moment. They're looking for a great [local] financial adviser." ¶ 61. Plaintiff cannot allege falsity based on publicly known information.

Plaintiff's challenge to statements on the basis that Nextdoor did not disclose the specific portion of "active users" who opened a Nextdoor email similarly fail. Nextdoor disclosed its definition of "active users," which included users both on the website or app and any user who

---

[2] At most, one Khosla Defendant signed the Form 8-K attaching the July 2021 Investor Presentation. Plaintiff cites no authority to support the idea that signing the cover sheet of a Form 8-K is sufficient to allege with particularity that the signatory is the maker of every statement in a document *attached* to the Form 8-K. *See Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 363 (S.D.N.Y. 2022) (executive who signed Form 6-K was not the "maker" of statements in attached press release, because signing "a cover page for SEC filings" is "purely ministerial"); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *15-16 (D.N.J. June 5, 2020) (signatory not "maker" of statements "attached to . . . Forms 8-K").

[3] The Khosla Defendants joined in and adopted the arguments advanced by the Nextdoor Defendants in their opening brief. *See* Mot. at 5. Here, too, the Khosla Defendants join in Nextdoor Defendants' Reply, specifically Section II.

"engage[d] with an email with monetizable content." Ex. B at 225[4]; *see also* ND Mot. at 2. And this was a definition that was repeated in every single public filing by Nextdoor during the class period. ND Mot. at 2. Given these extensive disclosures, there is no support for the suggestion that investors were misled into thinking that Nextdoor's "active users" included any specific portion of app users versus email users, much less that different types of active users should be considered in different ways. *See id.*

Furthermore, each of the statements Plaintiff still challenges in his Opposition are nothing more than honestly-held opinions, forward-looking statements, or expressions of corporate optimism and are therefore unactionable as a matter of law. *See* Nextdoor Defendants' Reply in Support of the Motion to Dismiss, Section II.A.

**3.    Plaintiff Still Identifies No Compelling Inference of Scienter as to the Khosla Defendants**

Plaintiff's Opposition does nothing to cure his failure to plead any particularized fact supporting a strong inference that any Khosla Defendant made any statement with an intent to defraud investors. At most, Plaintiff makes generalized allegations of intent as to all "Defendants" and points to former *Nextdoor* employees. But none of those allegations is specific to the Khosla Defendants and they all fail.

**Impermissible Group Pleading**. As an initial matter, Plaintiff's repeated reference to scienter for all "Defendants" is impermissible group pleading. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations.'"); *In re Finisar Corp. Deriv. Litig.*, 2012 WL 2873844, at *9 (N.D. Cal. July 12, 2012) (requiring scienter be alleged on an "individualized, defendant-by-defendant basis" and holding group pleading is "not permissible under the PSLRA"). For example, Plaintiff argues that because "Individual

---

[4] Plaintiff does not oppose the Khosla Defendants' Request for Judicial Notice. ECF No. 75. As such, the Court should take Judicial Notice of the documents submitted in support of the Khosla Defendants' Motion.

Defendants" and unnamed "C-level executives" at Nextdoor were in unidentified meetings and received undescribed reports, Defendants knew the challenged statements were purportedly false. *See, e.g.*, Opp. at 18, 19.  This group pleading is insufficient, but fails all the more as to the Khosla Defendants because Plaintiff has not (and cannot) allege that any Khosla Defendant was present in any Nextdoor internal meeting.  *See Swartz*, 476 F.3d at 764–65 (explaining a plaintiff cannot "merely lump multiple defendants together").

**No Motive**.  Plaintiff's group-pleading scienter theory is further undercut by the lack of a plausible motive for the Khosla Defendants to commit fraud.  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) ("[T]he lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter."); *Bhangal v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4505465, at *16 (N.D. Cal. Oct. 15, 2024) (the lack of plausible motive allegations "tips the scale in favor of Defendants on scienter").  The Khosla Defendants' Motion explained that Plaintiff's only motive theory as to the Khosla Defendants—a financial incentive to complete the Merger—is impermissible under Ninth Circuit law.  Mot. at 15.  Plaintiff makes zero arguments to rebut this argument, thereby conceding it.

Even if generalized SPAC interests were sufficient to plead scienter, Plaintiff concedes the Khosla Defendants had ample time to complete a business combination at the time of the Merger.  Plaintiff admits that even if the Merger was not finalized, the Khosla Defendants had nearly twenty-one more months to find another target company.  ¶¶ 35-36, 47.  Plaintiff does not explain why Khosla Defendants would be motived to complete a Merger with Nextdoor while purportedly knowing Nextdoor's stated growth expectations and potential was false or misleading.  Moreover, all material information about the Khosla Defendants' potential stock ownership post-Merger (and thus, their incentive to complete a merger) was publicly disclosed, undermining any motive to deceive investors for personal gain.  Mot. at 15-16.

In any event, Plaintiff's other theories do not support *any* inference of scienter, much less a strong one, for any Khosla Defendant.

**CW Allegations Untethered to the Khosla Defendants**.  In his Opposition, Plaintiff claims scienter is shown through allegations from CWs who had *no contact whatsoever* with the

Khosla Defendants. *See, e.g.*, Opp. at 19 (CW noting concerns expressed at "weekly companywide meetings attended by CEO Friar and the company's senior leadership team"). But Plaintiff's Opposition all but concedes that statements from CWs do not support scienter as to the Khosla Defendants by categorically ignoring the Khosla Defendants altogether. Opp. at 18-19. At most, Plaintiff alleges the CWs attended meetings also attended by Ms. Friar (a *Nextdoor* executive), but not any of the Khosla Defendants whatsoever. *See, e.g.*, Opp. at 7, 19. Indeed, the only time a CW claims to have even seen any specific Defendant is CW6 claiming they attended all-hands meetings where Ms. Friar was also "present." *Id.* at 21. CWs that are not alleged to have had contact with the Khosla Defendants carry no weight. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) (rejecting scienter allegations where "[n]one of the CWs had any direct (or indirect) contact with any of the Individual Defendants and therefore cannot provide reliable insight into the Defendants' state of mind").

**Access to Information Untethered to the Khosla Defendants**. Plaintiff's attempt to allege scienter based on the Khosla Defendants' roles or purported access to unspecified information is also insufficient. Plaintiff does not allege any specific admissions or witness accounts establishing the *Khosla* Defendants' involvement in Nextdoor's business, much less their access to any internal reports regarding Nextdoor's business. Generalized allegations about the importance of certain business metrics to *Nextdoor* do not meet the PSLRA's requirement for particularized allegations of the Khosla Defendants' scienter. Mot. at 13.

In his Opposition, Plaintiff argues the Khosla Defendants must have scienter because they must have been involved in due diligence before the Merger. Opp. at 20. But there is no allegation in the Amended Complaint that the Khosla Defendants learned anything about Nextdoor's operations at any time that would have undermined any challenged statement. *Cf. City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 611 (9th Cir. 2017) (finding no scienter and affirming dismissal with prejudice even where plaintiff alleged defendants were involved in due diligence). Permitting a plaintiff to adequately plead scienter based solely on the theory that a party conducted due diligence before a merger would eviscerate the PSLRA's requirement that plaintiffs plead fraud with particularity.

Plaintiff also claims that "Individual Defendants" received "executive reports" with unspecified data about Nextdoor's metrics. Opp. at 18. But Plaintiff does not specify that any Khosla Defendant received any report regarding Nextdoor's metrics, nor does Plaintiff explain what those reports said, when they were reviewed, or how they would have undermined any challenged statement. These types of general knowledge allegations cannot replace the particularized allegations the PSLRA requires. *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 539–40 (allegations that executives "received detailed reports" or "were 'obsessed with numbers'" are insufficient to plead a strong inference of scienter).

**Core Operations Untethered to the Khosla Defendants**. Plaintiff's Opposition also underscores how inappropriate a core operations theory is here as to the Khosla Defendants. Opp. at 19. Plaintiff claims the Khosla Defendants knew the challenged statements were fraudulently misleading because Nextdoor's user metrics were a "core operation." *See id*. But Plaintiff again conflates a supposed "core operation" of *Nextdoor* with any operation of the Khosla Defendants. To invoke the core operations theory of scienter, Plaintiff must allege facts demonstrating that the subject of the challenged statement was a core operation of the defendant entity and "produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of the company's operations," or specific "witness accounts demonstrating that executives had actual involvement in creating false reports." *Welgus v. TriNet Grp.*, 2017 WL 6466264, at *19 (N.D. Cal. Dec. 18, 2017). Plaintiff offers no such allegation here. Plaintiff does not explain how internal metrics or assessments of future growth potential at *Nextdoor* was a core operation of any *Khosla Defendant*.

Plaintiff's cited case, *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1261 (D. Nev. 2019), further illustrates why Plaintiff's core operations theory is insufficient. *See* Opp. at 19. Discussing the knowledge of "a company's key officers," *Brendon* held that the core operations theory *may* support scienter where the relevant facts about a *company's* business are of such prominence to *that company's management* that it would be absurd to suggest they didn't know about them. *Brendon*, 412 F. Supp. 3d at 1261. In other words, management and individuals who "closely supervise[] . . . functions performed by [company] personnel and

contractors" are the relevant individuals to a core operations inquiry. *Id.* Plaintiff has not alleged any Khosla Defendants had any executive or supervisory role (or any role whatsoever) at Nextdoor.

\*   \*   \*   \*   \*   \*   \*   \*

The "opposing inference of nonfraudulent intent" is far more compelling than Plaintiff's scienter theory that is not particularized as to any Khosla Defendant. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Plaintiff's scienter theory is less compelling than the non-fraudulent inference that the Khosla Defendants genuinely believed in the accuracy of the challenged statements and the potential value to shareholders of the Nextdoor Merger. Plaintiff's Opposition does not provide *any* plausible explanation for why the Khosla Defendants would risk their reputations and careers in a fraudulent scheme to push through a Merger with Nextdoor that they supposedly knew would fail to meet investor expectations, especially with twenty-one months left before the SPAC's transaction deadline. *Prodanova*, 993 F.3d at 1107 (scienter theory failed because defendant "would stand to lose more from its allegedly fraudulent actions than [they] would gain").

Indeed, the Khosla Defendants showed their belief in the merits of the Merger: they *purchased more Nextdoor shares* during the class period after the Merger was completed. *See* Mot. at 17; Ex. F. This fact only further rebuts a showing of fraudulent intent. *See Cai v. Eargo, Inc.*, 2025 WL 66041, at \*2 (9th Cir. 2025) (holding plaintiffs failed to plead scienter, particularly when individual defendants "*increased* their . . . stock holdings during the class period, which contradicts the inference of scienter") (emphasis in original); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884–85 (9th Cir. 2012) (the lack of advantageous stock sales "during the period between the allegedly fraudulent statements and the subsequent public disclosure" does not support an inference of scienter and "[i]n fact" supports the opposite inference); *Bao v. Solarcity Corp.*, 2016 WL 54133, at \*7 (N.D. Cal. Jan. 5, 2016) (finding that stock purchases during the class period weighed against an inference of scienter).

### C.    Plaintiff's Amended Complaint Does Not Adequately Allege Loss Causation

Finally, the Complaint should be dismissed for the independent reason that Plaintiff has failed to show loss causation. Mot. at 17. The Ninth Circuit "require[s] securities fraud plaintiffs to allege that the defendant lied about '*the very facts*' causing the plaintiffs' losses." *Nektar*, 34 F.4th at 838 n.6 (emphasis added). Plaintiff relies on a tenuous, unsupported causal connection between the alleged misrepresentations and Nextdoor's stock price decline. But this is insufficient. *See id.* at 839 (rejecting argument that plaintiffs need only allege "a tenuous causal connection" to support loss causation); *Espy*, 99 F.4th at 540 (loss causation must be pled "with particularity").

Plaintiff argues that four disclosures in 2022, which reported various data points about users, "revealed that [Nextdoor's] active user base was not genuinely engaged and that the Company was structurally incapable of growing like Twitter or Snap." Opp. at 7 (citing ¶ 153). But Plaintiff provides *zero* support for any connection between the disclosures in 2022 and any challenged statement. Plaintiff cannot simply point to a stock price decline as demonstrating loss causation without particularized facts tying the cause of that stock price decline to some previously undisclosed fraud. *Espy*, 99 F.4th at 540.

### D.    The Amended Complaint Does Not State a Section 20(a) Claim)

Plaintiff's assertion that the Complaint adequately pleads a Section 20(a) claim against the Khosla Defendants by merely "pleading their positions and alleging their ability to control," Opp. at 25, is incorrect. Simply being a CEO or high-ranking officer does not make one a "controlling person" of one's own company. *SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011). That principle is even more applicable here, where Plaintiff makes only the conclusory allegation that Khosla Defendants had control over another company in which they held *no position*, much less a controlling one. Opp. at 25. Here, Plaintiff alleges a Section 20(a) violation for the Khosla Defendants "[b]y virtue of their positions and their power to control public statements." ¶ 187. Courts have rejected language identical to that used by Plaintiff as no more than conclusory allegations. *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (rejecting as conclusory plaintiff's "barebones allegations that '[b]y virtue of

their positions and their power to control public statements'" defendants had controller liability); *Red River Res., Inc. v. Mariner Sys., Inc.*, 2012 WL 2507517 (D. Ariz. June 29, 2012) (same). Furthermore, the Section 20(a) claim must be dismissed because it is predicated solely on a Section 14(a) claim, which Plaintiff has abandoned. *See supra* Section II.A. Despite Plaintiff's contrary assertion, Opp. at 25, the Complaint explicitly ties the Section 20(a) cause of action only to a Section 14(a) violation, ¶¶ 187-91. *See* Mot. at 25. In any event, Plaintiff's Section 20(a) claim fails because he has not adequately alleged an Exchange Act claim. *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

### E.    Dismissal With Prejudice Is Appropriate Here

Plaintiff cannot remedy the deficiencies in his allegations as to the Khosla Defendants and dismissal with prejudice is therefore appropriate. *Zucco*, 551 F.3d at 1007 (explaining dismissal with prejudice is appropriate where it is "clear that the plaintiffs had made their best case and had been found wanting").

## III.    CONCLUSION

The Amended Complaint should be dismissed.

Dated:  February 13, 2025                    LATHAM & WATKINS LLP

                                             By: */s/ Colleen C. Smith*
                                                 Colleen C. Smith

                                             *Attorneys for Defendants Vinod Khosla, Samir Kaul, Peter Buckland, Khosla Ventures LLC, and Khosla Ventures SPAC Sponsor II LLC*