COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
SHANNON M. EAGAN (212830)
(seagan@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

Attorneys for Defendants
Nextdoor Holdings, Inc. and Sarah J. Friar

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE J. ADAMO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXTDOOR HOLDINGS, INC. and SARAH J. FRIAR,<br><br>Defendants. | Case No. 5:24-cv-01213-EJD<br><br>**CLASS ACTION**<br><br>**NEXTDOOR DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:         October 30, 2025<br>Time:         9:00 a.m.<br>Courtroom:  4<br>Judge:        Hon. Edward J. Davila |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF CONTENTS**

**Page**

I.　INTRODUCTION ...................................................................................................... 1

II.　PLAINTIFF FAILS TO STATE A 10(B) CLAIM.................................................... 2

　A.　The Opposition Confirms that Plaintiff has not Adequately Alleged Falsity ......... 2

　　1.　Plaintiff Concedes that Ms. Friar's Statement Was Not False or Misleading.................................................................................................... 3

　　2.　Plaintiff's Misguided Attempt to Redefine Portions of Ms. Friar's Statement Should be Rejected...................................................................... 5

　　3.　Plaintiff's "Context" Fails to Demonstrate that Ms. Friar's Statement Was False or Misleading........................................................... 8

　B.　Ms. Friar's Statement Was an Honestly Held Opinion........................................... 9

　C.　Plaintiff Fails to Plead a Strong Inference of Scienter.......................................... 10

　D.　Plaintiff Fails to Plead Loss Causation ................................................................. 13

III.　PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY UNDER 20(A) .......................................................................................................................... 14

IV.　LEAVE TO AMEND WOULD BE FUTILE........................................................... 15

V.　CONCLUSION......................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-i-

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bush v. Rust-Oleum Corp.*,
  2021 WL 24842 (N.D. Cal. Jan. 4, 2021) ................................................................................. 7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ............................................................................................. 9-10

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
  477 F.Supp.3d 123 (S.D.N.Y. 2020) ....................................................................................... 7

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ............................................................................................... 15

*Espy v. J2 Global, Inc.*,
  99 F.4th 527 (9th Cir. 2024) .................................................................................................. 12

*Fadia v. FireEye, Inc.*,
  2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ........................................................................ 10

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
  501 F.Supp.3d 735 (N.D. Cal. 2020) ..................................................................................... 14

*Hertzberg v. Dignity Partners, Inc.*,
  191 F.3d 1076 (9th Cir. 1999) ................................................................................................. 7

*K-fee Sys. GmbH v. Nespresso USA, Inc.*,
  2022 WL 22676736 (C.D. Cal. Aug. 31, 2022) ....................................................................... 7

*Kellman v. Whole Foods Mkt. Inc.*,
  313 F.Supp.3d 1031 (N.D. Cal. 2018) .................................................................................... 7

*Kuriakose v. Fed. Home Loan Mortg.*,
  2011 WL 1158028 (S.D.N.Y. Mar. 30, 2011) ......................................................................... 5

*Leventhal v. Chegg, Inc.*,
  721 F.Supp.3d 1003 (N.D. Cal. 2024) ................................................................................... 15

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ............................................................................................... 12

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) .................................................................. 10, 11

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ............................................................................................ 10, 14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-ii-

**REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sandifer v. U.S. Steel Corp.*,
571 U.S. 220 (2014) ....................................................................................................... 7

*Silbersher v. Allergan Inc.*,
2023 WL 2593777 (N.D. Cal. Mar. 20, 2023) ............................................................... 7

*Sneed v. AcelRx Pharms., Inc.*,
2023 WL 4412164 (N.D. Cal. July 7, 2023) ................................................................ 11

*Sneed v. Talphera, Inc.*,
147 F.4th 1123 (9th Cir. 2025)................................................................................. 4, 10

*In re Solarcity Corp. Sec. Litig.*,
274 F.Supp.3d 972 (N.D. Cal. 2017) .......................................................................... 11

*United States v. Alvarez-Sanchez*,
511 U.S. 350 (1994) ....................................................................................................... 7

*Vassel v. Carson Helicopters, Inc.*,
2014 WL 1912056 (E.D. Cal. May 13, 2014).............................................................. 6

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021)..................................................................................... 11

*Zucco Partners LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)....................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-iii-

## I.    INTRODUCTION

The Opposition confirms that Plaintiff's Second Amended Class Action Complaint (the "SAC") fails to adequately allege falsity, scienter, and loss causation with respect to the sole remaining challenged statement in this case—a statement by Nextdoor's then-CEO on its Q1 2022 earnings call, describing Nextdoor's product strategy and its weekly and daily "active users" from that quarter.

As to falsity, Plaintiff concedes that Nextdoor repeatedly and *accurately* described that it defined and measured its "active user" metric—the metric that is the subject of the challenged statement—as including both on-platform users (i.e., users who opened Nextdoor's app or website) and off-platform users (i.e., users who opened a Nextdoor email).  Plaintiff likewise concedes that, as the Court held with respect to Plaintiff's prior complaint, "Nextdoor's explicit definition of 'active users' eliminates any reasonable expectation that the term could mean something else," meaning that investors understood that when Ms. Friar referred to "active users" in her statement, she was referring to both on-platform and off-platform users.  Plaintiff now claims he is not taking issue with the "definition" of active users, but rather the "proportion" of active users that were off-platform.  But Plaintiff does not (and cannot) identify a single statement that communicated anything at all about what Nextdoor's ratio of on-platform versus off-platform users was.  As a result, Plaintiff resorts to plucking statements out of context, and relying on previously-rejected "industry standards," to re-write Ms. Friar's statement.  In essence, he argues that investors would have ignored Nextdoor's explicit definition of "active users"—which made clear that some proportion of its users were off-platform—in favor of vague dictionary definitions of words like "community" and statements about different metrics in different contexts.  But even these vague definitions and other statements said nothing about the proportion of on-platform versus off-platform users, and they certainly did not suggest that "the proportion of active users that were purely off-platform was negligible."  As a result, Plaintiff fails to plead with particularity that Ms. Friar's statement was false or misleading.

Plaintiff also fails to plead that Ms. Friar intentionally misled investors, and so the Court can dismiss on scienter grounds as well.  The Opposition confirms that Plaintiff's unparticularized

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

allegations are insufficient to plead any inference of scienter, let alone a cogent and compelling one. Plaintiff points to: (1) vague "concerns" from employees about how Nextdoor defined "active users," without any allegations that Ms. Friar actually heard such concerns, let alone what she thought about them, (2) unspecified reports, reflecting unspecified information, at unspecified points in time, without any allegations about what Ms. Friar actually saw, when she saw it, or what she thought of the information, (3) and the rarely applied "core operations" doctrine, without any allegations supporting that it should be applied here (or that, even if it were applied, it would be demonstrative of scienter in this case). And Plaintiff's effort to walk back his *own* allegation—the only allegation that actually speaks to scienter and which completely negates it—is unconvincing. The SAC confirms that Ms. Friar honestly believed that Nextdoor accurately measured and described "active users" because "all engagement is engagement." The Court can dismiss the SAC on that basis.

Finally, Plaintiff fails to adequately allege loss causation for the two stock drops he identifies. The stock drops followed disclosures announcing Nextdoor's guidance revisions in August and November 2022, which attributed those revisions to the global macroeconomic conditions affecting Nextdoor's customers and markets. Neither disclosure said anything about how Nextdoor defined its "active user" metric, or to the existence or spread of on-platform versus off-platform users. And Plaintiff's attempt to link the disclosures to his allegations by pointing to a decline in a different metric—average revenue per user (or "ARPU")—is unavailing because that metric only relayed information for that particular quarter, *not the prior quarter* that was the subject of Ms. Friar's statement.

The SAC should be dismissed, with prejudice.

## II.    PLAINTIFF FAILS TO STATE A 10(B) CLAIM

### A.    The Opposition Confirms that Plaintiff has not Adequately Alleged Falsity

The SAC asserts that Ms. Friar's statement during Nextdoor's Q1 2022 earnings call was false and misleading.[1]    In that statement, Ms. Friar shared her opinion about how "active"

---

[1] All defined terms are the same as those in the Defendants' Motion to Dismiss ("Mot."), ECF No. 86 or Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opp."), ECF No. 89, unless

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

Nextdoor's "community" was, that Nextdoor's "product strategy" was "working" and described Nextdoor's weekly and daily "active user" metrics for *that quarter*:

> Our community is active and becoming increasingly active. Our product strategy in 2022 is centered on strengthening engagement through building an Active Valued Community. It's working. In Q1, over 50% of neighbors were weekly active and over half of weekly active users were active daily, highlighting that as we move neighbors from onboarding to monthly to weekly, they have a high propensity to make Nextdoor a daily use case.[2] (Ex. 11 at 2.)

According to the Opposition, that statement was false because it suggested that "virtually all" of Nextdoor's users were on-platform. Aside from the fact that this allegation is found nowhere in the SAC (at most, the SAC alleges that the statement implied that "by and large" Nextdoor's "active users" were on-platform), Plaintiff fails to plead falsity for several reasons. First, Plaintiff's concession that Nextdoor's "active user" definition was accurately and repeatedly disclosed undermines any attempt to misconstrue Ms. Friar's statement. Second, Plaintiff cannot ignore the "active user" definition in favor of vague dictionary definitions and out-of-context snippets to try to redefine Ms. Frair's statement. Third, the "context" from different metrics in different situations and the already-rejected "industry standard" argument cannot be used to turn Ms. Friar's statement into something she did not say.

### 1. Plaintiff Concedes that Ms. Friar's Statement Was Not False or Misleading

In the Opposition Plaintiff concedes that Nextdoor accurately, explicitly, and repeatedly disclosed how it defined and measured "active users" on its platform—namely, as a "Nextdoor user who opens [the] application, logs on to [the] website" (i.e., an "on-platform" users") or "***or engages with an email with monetizable content at least once during a defined . . . period***" (i.e., an "off-platform" user). (Opp. at 10, 11.) And as Plaintiff concedes, this explicit definition "eliminate[d] any reasonable expectation that the term could mean something else" *even if* the definition "was unusual in the industry." (*Id.*) Despite this, Plaintiff nonetheless claims that Ms. Friar's statement

---

otherwise noted. All emphasis is added, and internal quotes and citations omitted unless otherwise noted.

[2] Plaintiff does not oppose Defendants' Request for Judicial Notice (the "RJN") (ECF No. 87). As such the Court may consider those documents for the reasons set forth in the RJN.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

was false and misleading because it somehow suggested that "virtually all" users were on-platform. (*See id*. at 8, 11.)  He is wrong.

Ms. Friar's statement did not suggest *anything* about the ratio of on-platform versus off-platform users, let alone that "the proportion of active users that were purely off-platform was negligible." (*See id.* at 2.)  Just the opposite.  Nextdoor's explicit statement that its definition of the key "active user" metric included "off-platform" users informed the market that a non-negligible portion of its users were, in fact, off-platform.  Otherwise, what would have been the point of alerting investors—time and again—to that fact?  Likewise, if the number of "off-platform" users were "negligible," there would have been no need for Nextdoor to tell investors about the challenges of measuring off-platform users, but it did precisely that.  (Mot. at 4; *see, e.g.*, Ex. 4 at 21 ("In September 2021, Apple released changes to the Apple email client available on its operating systems, including iOS 15 and iPadOS 15, which limit our ability to measure user engagement with emails containing monetizable content for users that use the Apple email client. The introduction of these changes impacts our ability to accurately calculate a portion of WAUs for periods following the adoption of the updated operating systems.").)

As the Ninth Circuit recently affirmed in *Sneed v. Talphera, Inc.*, "[c]ontext matters because [courts] presume that a reasonable investor—who has money on the line—acts with care and seeks out relevant information."  147 F.4th 1123, 1131 (9th Cir. 2025).  This includes "information outside the immediate document" containing the challenged statement as other information "can form the context in which a reasonable investor would view a particular statement." *Id*.  Here, reasonable investors would have viewed Ms. Friar's statement in the context of Nextdoor's repeatedly and explicitly disclosed definition of "active users," and they would have understood that when she discussed "active" users, she was not referring strictly to "on-platform" users of the Nextdoor app.

The Opposition also apparently concedes that Plaintiff is not challenging the portions of Ms. Friar's statement about whether the Nextdoor "community" was "active" or whether Nextdoor's product strategy was "working." (*See* Opp. at 18 ("In their Motion, Defendants argue that Ms. Friar's May 10, 202[2] Statements 'contain[ed] multiple opinions,' such as whether the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

Nextdoor community was active or whether Nextdoor's product strategy was working. . . . But even if that were true, those are not the propositions in the May 10, 202[2] Statements articulated above that are alleged to be misleading.").)  Unfortunately, the Opposition does not actually specify *what* portion of Ms. Friar's statement Plaintiff is then challenging, as the SAC states that "Defendant Friar misled investors about how 'active' Nextdoor's 'community' was."  (SAC ¶¶ 51, 52.)  The Court can dismiss the case because Plaintiff's theory of falsity is incoherent.

### 2.    Plaintiff's Misguided Attempt to Redefine Portions of Ms. Friar's Statement Should be Rejected

The Opposition claims that Nextdoor's definition of "active users", and the Court's ruling related thereto, are irrelevant because portions of Ms. Friar's statement apparently suggested that "virtually all" of Nextdoor's "active users" were "on-platform."  (*See* Opp. at 6.)  Not so.

***Community*.**  Plaintiff first claims that Ms. Friar's reference to the Nextdoor "community" somehow "implied that virtually all 'active users' were . . . visiting the Nextdoor platform."  (*Id.* at 8, 12.)  In support, Plaintiff relies solely on the Webster's Dictionary definition of "community" and purports to import this definition into Ms. Friar's statement.  (*Id*. at 12.)  But Plaintiff ignores the *six* other ways in which Webster's defines "community" and wrongly assumes that there is only one way to "interact" in a community.  Plaintiff also wrongly assumes that investors would ignore Company-specific disclosures on a subject in favor of some vague and ambiguous dictionary definition that nobody pointed to or used.  Nextdoor repeatedly and accurately disclosed its definition of "active users."  (*See* Mot. at 8-9.)  It is not plausible to suggest that Nextdoor's investors would ignore these repeated and express disclosures in favor of Plaintiff's idiosyncratic interpretation of a random dictionary definition.  *See Kuriakose v. Fed. Home Loan Mortg.*, 2011 WL 1158028, at *11 (S.D.N.Y. Mar. 30, 2011) (refusing to ignore defendants' explicit disclosure of its definition of "subprime" loans, as loans to borrowers with a FICO score of 620 or less, even if the "generally accepted" definition of "subprime" referred to loans to borrowers with FICO score of less than 600).

***Active Valued Community*.**  Plaintiff next points to certain buzzwords used in Nextdoor's September 2021 presentation, in connection with its marketing phrase "Active Valued

Cooley LLP
Attorneys at Law
Palo Alto

5

Reply ISO MTD Second Amended
Class Action Complaint
Case No. 5:24-cv-01213-EJD

Community," as evidence that Ms. Friar's reference to the same marketing phrase in her May 2022 statement could only mean that she was referring solely to "on-platform" users.[3] (Opp. at 9.)

- Community: "shared attribute or interest" "belonging" "place"

- Valued: "trust" "dependable" "exchange value"

- Active: "involved in the community" "communicate" "give and get help"

According to Plaintiff, the buzzwords associated with "active" "connote on-platform activity" so Nextdoor had "*clearly* defined an 'active valued community' as consisting of on-platform users" and therefore, when Ms. Friar's statement referred to the same marketing slogan, she somehow suggested to investors that Nextdoor's "active users" were "by and large" "on-platform" users. (*Id.*) There are several problems with this argument.

To start, Plaintiff's argument rests on several false premises. He incorrectly assumes that one cannot be "involved in the community" or "communicate" by reading an email. (*Id.*) But, of course, there are two sides to a communication, and the recipient of a communication is just as much a part of the communication as the sender. And reading an email about something happening in one's community is no more or less "involved" as reading an update on the Nextdoor app. (*Id.*) Plaintiff also wrongly assumes that, even if the "active" buzzwords could only be describing the actions of "on-platform" users, these buzzwords were somehow a representation about how many or what percentage of "active users" did the things in question, or how often they did them. (*Id.*) They were not. Not surprisingly, Plaintiff does not identify a single statement quantifying how many "active users" were "involved in the community", "communicat[ing]," or "giv[ing] and get[ting] help," whether on the Nextdoor app or otherwise. (*Id.*)

Plaintiff also ignores critical context. In the *same* September 2021 presentation he relies on, Nextdoor made clear—on at least 5 different slides—that its definition of "active users" included those who "opened a content email," in other words "off-platform" users. (Ex. A at 15, 51, 101, 103, 123.) It is absurd to suggest that a reasonable investor would have understood from

---

[3] Plaintiff attaches three exhibits to his Opposition, without seeking judicial notice of such documents. *See Vassel v. Carson Helicopters, Inc.,* 2014 WL 1912056, at *3-4 (E.D. Cal. May 13, 2014) (denying judicial notice where plaintiff did not move for, nor "set forth any legal argument supporting the court's ability to consider these matters").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

that presentation that "active" users referred only (or even predominantly) to "on-platform" users. (See Mot. at 9.)

**Daily Use Case.**  Plaintiff argues that Ms. Friar's statement that neighbors that move "from onboarding to monthly to weekly . . . have a high propensity to make Nextdoor a daily use case" "misleadingly suggested that daily active users are on-platform users who actively engage with the Nextdoor website." (Opp. at 13.)  Again, Plaintiff asks this Court to ignore Nextdoor's explicit disclosures on the subject, in favor of other definitions supporting his alleged interpretation of "active users."  But the cases Plaintiff cites in support of this argument only undermine his position. (*See id*. at 13-14.)  Most of the cases involved statutory interpretation (so, of course, no definition had been disclosed by any party).  *See, e.g.*, *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999) (interpreting the meaning of "any person" under Section 11 of the Exchange Act); *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994) (interpreting the meaning of "delay" under federal criminal statute, 18 U.S.C.A. § 3501).[4]  Others were not in the securities context (and likewise did not involve situations where a party had previously defined the phrase in question).  *See, e.g.*, *Kellman v. Whole Foods Mkt. Inc.,* 313 F.Supp.3d 1031, 1051 (N.D. Cal. 2018) (interpreting use of undefined, generic and widely known term "hypoallergenic" in false advertising and unfair competition case).[5]  And the only securities case Plaintiff cites involved a situation where defendants ***had not shared an explicit definition*** of the word in question and their effort to ascribe "special industry meaning" to the phrase in their motion to dismiss was deemed "facial[ly] implausibl[e]" by the Court in light of the statement in question.  *See City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F.Supp.3d 123, 130 (S.D.N.Y. 2020).  Here, on the other hand, the Court has already held that "Nextdoor's explicit definition of 'active user' eliminates any reasonable expectation that the term could mean something else." (Order at 14.)  Plaintiff's attempt to sidestep the Court's ruling should be rejected.

---

[4] *Silbersher v. Allergan Inc.*,  2023 WL 2593777, at *10 (N.D. Cal. Mar. 20, 2023) (interpreting meaning of certain Federal Claims Act amendments); *Sandifer v. U.S. Steel Corp.,* 571 U.S. 220, 227 (2014) (interpreting meaning of "clothing" under federal labor law).
[5] *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 2022 WL 22676736, at *2 (C.D. Cal. Aug. 31, 2022) (interpreting meaning of the word "barcode" in patent infringement action); *Bush v. Rust-Oleum Corp.,* 2021 WL 24842, at *5 (N.D. Cal. Jan. 4, 2021) (interpreting "non-toxic" and "earth friendly" in consumer-products mislabeling case).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

### 3.    Plaintiff's "Context" Fails to Demonstrate that Ms. Friar's Statement Was False or Misleading

While ignoring the context of Nextdoor's explicit definition of "active users," Plaintiff suggests that the Court should instead look to statements about *different* metrics in *different* settings as supporting "context" for his claimed interpretation of Ms. Friar's statement. None of these statements support Plaintiff's position.

Plaintiff points to Nextdoor's "comparison of its own 'active users' to those of peers like Twitter and Snap" and claims that such comparison "suggested to investors that the inclusion of off-platform users did not materially change its active user count." (Opp. at 15.) That argument is non-sensical. In *the very slide* making the comparison to Twitter and Snap, Nextdoor specifically said that the "[c]omparison is illustrative **as each company calculates daily active users differently**." (Ex. 3 at 20.) If the "inclusion of off-platform users" was immaterial, there would have been no need to point out the difference in making the comparison.

Plaintiff's reliance on different metrics—with different definitions—fares no better. For example, Plaintiff points to statements about the number of "verified neighbors" or "verified members" "on the platform." (Opp. at 15, citing SAC ¶¶ 42, 43-44.) But "verified neighbors" were a different user metric: "neighbors who are verified in a valid Launched (10+ member) or Pilot (< 10 member) neighborhood, and in good standing (i.e., not deleted, deactivated, or suspended)." (Ex. A at 123.) In other words, Nextdoor users could be "verified neighbors" without being "active" at all, let alone "active" "on-platform." They simply needed to not be "deleted, deactivated, or suspended" from the Nextdoor "platform." As a result, these statements (and the neighbor/member metric) are entirely irrelevant to interpreting Ms. Friar's "active user" statement. The same is true for the statements about frequency and depth of "sessions" that Plaintiff points to. (Opp. at 15, citing SAC ¶ 42.) Nextdoor was clear that users who started a "session" were only one aspect of Nextdoor's "active users"—the "on-platform" users. (*See, e.g.*, Ex. 3 at 56 (defining "active users" as the "[c]ount of unique neighbors who have started a session or opened a content email").) Those statements said nothing about "off-platform" users, had nothing to do with the number of "off-platform" users and they were not, in any way, inconsistent with Ms. Friar's

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

subsequent statements.[6]

Industry context (Opp. at 16-17) is likewise irrelevant where, as here, Defendants were explicit in how they defined and measured the "active user" metric.[7] (Mot. at 9.) Plaintiff claims that despite the Court's prior rejection of the "industry" practice argument, it is now relevant because "industry practice primed investors to believe that the proportion of on-platform users was much larger than it actually was." (Opp. at 17.) The problem with Plaintiff's theory, however, remains the same. At no point did Ms. Friar, or anyone at Nextdoor, suggest that a certain proportion of users were on-platform or off-platform. Industry "customs and practices" cannot manufacture statements that were not made. Nor can they replace express disclosure to the contrary. The Court should reaffirm its holding that even if Nextdoor's definition of "active user" were "highly unusual in the industry," "Nextdoor's explicit definition of 'active user' eliminate[d] any reasonable expectation that the term could mean something else."[8] (Order at 14.)

**B.    Ms. Friar's Statement Was an Honestly Held Opinion**

Plaintiff's response to the argument that Ms. Friar's statement reflected her honestly-held opinion and is therefore inactionable as a matter of law is simply to rehash the same flawed premise—namely, that Ms. Friar's statements supposedly suggested that "virtually all" of Nextdoor's "active users" were "on-platform." (Opp. at 17-18.) For the reasons discussed above, Plaintiff is wrong about what Ms. Friar said.

In any event, at its core, Plaintiff's argument boils down to a disagreement about the degree of "on-platform" users that are needed to call a "community" "active." That is fundamentally a matter subject to differing opinions, meaning that Plaintiff was required to "allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th

---

[6] Plaintiff again points to the "active" buzzwords from Nextdoor's September 2021 investor presentation. As discussed above, those arguments are unavailable. *See supra* at 6.
[7] The same is true for Plaintiff's proffered "expert" testimony about the "common usage" of the term "active user" within the industry (Opp. at 6, 16), which is irrelevant in light of Nextdoor's express disclosure about how it measured and defined "active users." (*See* Mot. at 13).
[8] The cases that Plaintiff cites stand for the unremarkable proposition that "customs and practices of the relevant industry" are relevant to assessing a statement. (Opp. at 17, citing *Omnicare* & *Golub*). But neither involved a situation like this, where a plaintiff sought to modify an explicit definition in favor of one used by the "industry."

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

Cir. 2017). He has failed to do so and, in fact, alleges facts that completely undercut any such argument. (*See* Mot. at 14 (citing FE allegation in SAC ¶ 72 that "Sarah was a big advocate that all engagement is engagement").)

### C.    Plaintiff Fails to Plead a Strong Inference of Scienter

Given the flimsy nature of Plaintiff's falsity theory, it is not surprising that Plaintiff also fails to adequately allege scienter. *Talphera,* 147 F.4th at 1127 ("[t]he flimsy evidence of falsity necessarily undermines the ability to show scienter").

As he did with falsity, Plaintiff's primary response in the Opposition is to point back to the unsupported allegation that Ms. Friar "implied to investors that virtually all of [Nextdoor's] active users were on-platform." (Opp. at 21.) From there, Plaintiff makes the circular argument that "if an individual knowingly makes a false statement, there is a strong inference that the individual acted with scienter in making that statement." (*Id.*) But Plaintiff has not actually alleged facts (much less particularized facts) suggesting that Ms. Friar believed her statement was false and therefore "knowingly" made a false statement. To demand such allegations is not an "impossibly high" standard (*see id.*)—it is *the* scienter standard that has been set forth by countless courts in this Circuit and nationwide. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (plaintiff must allege facts showing that "defendants believed that they were making false or misleading statements"); *see also In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *41 (S.D. Cal. Mar. 30, 2005) ("[A]llegations that a Defendant was generally aware of facts . . . by itself, is not sufficient to show scienter."). Here, the Opposition confirms that the SAC fails to allege that Ms. Friar made her statement with scienter.

The Opposition points to "concerns from employees" about the definition of "active users."[9] (Opp. at 19.) But Plaintiff ignores binding case law holding that employee "concerns" cannot

---

[9] Plaintiff makes no effort to explain how the imprecise nature of his FE allegations could support scienter. (*See* Mot. at 16-19.) References to unspecified "companywide meetings," with unspecified individuals where unspecified "Nextdoor employees" expressed "concerns about the definition of users," and which do not identify whether Ms. Friar heard any such questions or concerns (let alone, how she responded to them) are inadequate to meet the strict pleading standards under the PSLRA. *See Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *16 (N.D. Cal. Nov. 14, 2016) ("At a minimum, [p]laintiffs needed to have provided information about *precisely* what was said by the parties in these meetings, which facts the [d]efendants were exposed to, and why this exposure supports an inference of scienter.").

Cooley LLP
Attorneys at Law
Palo Alto

10

Reply ISO MTD Second Amended
Class Action Complaint
Case No. 5:24-cv-01213-EJD

support scienter, where, as here, there are no allegations that defendants adopted or agreed with the concerns. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021) (allegations that employees raised concerns insufficient, because there were no facts indicating that defendants adopted or agreed with the concerns); *Sneed v. AcelRx Pharms., Inc.*, 2023 WL 4412164, at *11 (N.D. Cal. July 7, 2023) (same). The Opposition does not even attempt to distinguish this case law and does not point to a single allegation supporting that Ms. Friar agreed with any "concerns" about how "active users" were defined. And Plaintiff's effort to walk back his *own* allegation that Ms. Friar was a big advocate that "all engagement is engagement" is unconvincing. (*See* Opp. at 21.) That allegation—the *only allegation* in the Complaint that speaks directly to Ms. Friar's state of mind—negates any inference of scienter.

Next, the Opposition claims that FE6's allegation that Ms. Friar was emailed "daily, weekly, and monthly 'executive reports'" with data on DAUs, WAUs, Monthly Active Users, revenue, advertising, and the percentage of users that were on-platform versus off-platform" is "dispositive" of scienter.[10] (Opp. at 19.) Far from it. Even if these reports had alerted Ms. Friar to the spread of on-platform versus off-platform users, that is not enough. (*See* Mot. at 18.) There are no particularized allegations showing that knowledge of a 50/50 spread between on-platform and off-platform users alerted Ms. Friar to the fact that *her* statement–a statement that said nothing about the proportions of on-platform versus off-platform users–was misleading to investors. *Peregrine Sys.*, 2005 WL 8158825, at *41 ("[A]llegations that a Defendant was generally aware of facts . . . by itself, is not sufficient to show scienter."). Moreover, as set forth in the Motion, FE6 does not actually provide any "allegation[s] that [Ms. Friar] saw specific reports," or any specific "references to [the] contents" of those reports, which would have informed Ms. Friar that her statement was false, or what she thought of such content. *In re Solarcity Corp. Sec. Litig.*, 274 F.Supp.3d 972, 1013 (N.D. Cal. 2017); Mot at 17. Plaintiff's only response is to ignore the case law cited by the Motion, claim without any authority that "no such bright-line requirement exist[s]," and double-down on the same inadequate allegations. (Opp. at 21.) But without alleging facts showing that

---

[10] Plaintiff does not dispute that none of the former employees had any direct contact with Ms. Friar (*see* Opp. at 20), which further undermines his ability to allege scienter.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

Ms. Friar actually accessed any of the reports that were generally emailed to the entire C-suite, when she did so, what the reports would have said at any particular time, or what she would have thought of them, Plaintiff fails to allege facts showing that any such reports put Ms. Friar on notice that her statement was false. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (general access to internal reports and data was "insufficient to demonstrate deliberate or conscious recklessness" as "plaintiffs [did] not allege with particularity any specific information showing that [the data in the reports] informed defendants" of the falsity of their statements).

Finally, Plaintiff falls back on the rarely applied "core operations" doctrine. (Opp. at 20.) As the cases cited by Plaintiff demonstrate, this doctrine is typically applied in situations of significant corporate distress. (*See* Opp. at 20, citing *Brendon v. Allegiant Travel Co.*, 412 F.Supp.3d 1244, 1261 (D. Nev. 2019) (*"*it would also be 'absurd' to suggest that the management of any airline, much less an airline experiencing significant operational challenges, would not be aware of pervasive maintenance issues like those alleged by the plaintiffs").) But even if the Court credited Plaintiff's argument that this was one of the exceedingly rare cases where the mix of on-platform and off-platform users was a fact of "such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter," *Espy v. J2 Global, Inc.*, 99 F.4th 527, 539-40 (9th Cir. 2024), that knowledge would be insufficient to allege scienter in this case. The allegations would have to show that *not only* did Ms. Friar understand the mix of on-platform versus off-platform users, but also that she understood that investors would interpret her statement to mean that "virtually all" of Nextdoor's "active users" were on-platform (and intended to mislead them into thinking as much). No such allegations have been pled and the "core operations" theory adds nothing to the allegations in this case.

As set forth in the Motion, a holistic analysis confirms that the only inference is an innocent one. Nextdoor was transparent with investors about how Nextdoor measured "active users" (including by counting off-platform users), consistent with Ms. Friar's view that "all engagement is engagement." In making the challenged statement, Ms. Friar shared her honestly held and accurate views about Nextdoor's community, product strategy, and "active user" metric for Q1 2022, while continuing to *increase* her holdings in Nextdoor. (Mot. at 19-20.) Plaintiff has not

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

(and cannot) allege scienter under these facts.

### D.    Plaintiff Fails to Plead Loss Causation

Plaintiff's loss causation theory confirms that his claims are nothing more than a hindsight attempt at investment insurance. On the two corrective disclosure dates the SAC identifies, Nextdoor revised its revenue guidance downward in light of the "increasingly complex macroeconomic conditions that affected [Nextdoor's] customers and markets." (Ex. 15 at 4, 16; *id.*, Ex. 20 at Ex. 99.1 at 3, 4, 13.) Neither Nextdoor, nor the market, attributed Nextdoor's revised guidance to issues with its "active user" metrics, or to the existence or spread of on-platform or off-platform users. Plaintiff nonetheless claims that these disclosures were "corrective" of Ms. Friar's statement. They were not.

Plaintiff's Opposition attempts to sidesteps the fact that the Complaint misleadingly claimed that the August 2022 disclosure "revealed that Nextdoor's platform materially declined" due to a decline in U.S. WAU, when both (1) *total* WAU (the measure Ms. Friar referred to in May 2022) had increased both quarter over quarter and year over year and (2) U.S. WAU had increased year over year (which, as Nextdoor had previously indicated, was the correct measure in light of seasonality and other factors). (*See* Mot. at 20-21.) He has no response whatsoever for his misleading portrayal or how these numbers are demonstrative of his unsupported allegation that "Nextdoor's platform materially declined." (SAC ¶¶ 62, 81.)

Instead, Plaintiff claims that he has adequately alleged loss causation because "Nextdoor's declining ARPU . . . revealed to investors that a significant percentage of Nextdoor's active users were off-platform users." (Opp. at 22.) Even setting aside the fact that nobody—neither Nextdoor, analysts, or other news sources—suggested that ARPU had declined in August and November 2022 because of "off-platform users," the idea that the ARPU reported in those quarters was corrective of something in prior quarters does not make any sense. ARPU reflects the "the average of the number of WAUs in that geography during the same period," and the ARPU that Nextdoor reported in August and November 2022 only reflected the ARPU for Nextdoor's "active users" during *those* quarters. (Ex. 5 at 24.) It therefore could not "reveal" anything about "active users" in *prior*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

periods, periods for which ARPU *had already been reported*.[11]  And even assuming that the lower ARPU reported in August and November 2022 was somehow corrective of Ms. Friar's May 2022 statement, Plaintiff does not explain how such information took two separate disclosures and "months to be absorbed by the market." (Opp. at 2.)  Both the August and November 2022 "corrective" disclosures are alleged to have revealed *the exact same information*—declining ARPU. (*See id.* at 22; SAC ¶¶ 81, 83.)  If declining ARPU somehow "revealed to investors that … a significant percentage of Nextdoor's active users were off-platform," (Opp. at 22) such revelation would have been clear by the first alleged corrective disclosure in August 2022.[12]

Because Plaintiff has not alleged any facts to show that the stock drops following these two "corrective" disclosures were "caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated facts," he has failed to adequately plead loss causation. *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F.Supp.3d 735, 770 (N.D. Cal. 2020).

**III.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY UNDER 20(A)**

The Complaint does not state a primary violation as to Nextdoor and Ms. Friar, and therefore the Section 20(a) "control person" claim against Ms. Friar necessarily fails. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 886.  Moreover, even if a primary claim survived, it would be "duplicative and nonsensical" to have a "control person" claim against Ms. Friar for a statement *she made herself*.  (Mot. at 22, citing *In re Zoom Sec. Litig.*, 2022 WL 484974, at *5 (N.D. Cal. Feb. 16, 2022).)  Plaintiff does not address either of the cases cited in the Motion and instead claims that there is "ample case law permitting both claims to proceed against the same individual." (Opp. at 24.)  But none of those cases involved the issue of whether an individual could have control person liability over a statement made *directly* by them, as Plaintiff has alleged here.  (Opp. at 24; citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir. 2000) (control person over

---

[11] Plaintiff's conclusory allegation that the loss causation reflected the "materialization" of some unspecified risk is likewise insufficient to plead loss causation. (*See* Opp. at 22-23.)

[12] Plaintiff's argument that the "quick and sustained price recovery" following these two disclosures "could just as well be attributed to continuing misrepresentation" (Opp. at 23) is unconvincing for the same reason.  He does not identify any facts that – following the August 2022 disclosure of declining ARPU – would have prevented anyone from learning the alleged "truth" that was supposedly revealed by the reporting of declining ARPUs.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD

financial statements); *In re Daou Sys., Inc.,* 411 F.3d 1006, 1030 (9th Cir. 2005) (control person over financial statements); *Leventhal v. Chegg, Inc.,* 721 F.Supp.3d 1003, 1018 (N.D. Cal. 2024) (control person over statements made by others).)  The Section 20(a) claim should be dismissed.

## IV.   LEAVE TO AMEND WOULD BE FUTILE

The Opposition confirms that, despite Plaintiff's attempt to reshape his falsity theory, he fails to state a claim.  The SAC should be dismissed with prejudice this time.  *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad'") (citation modified).

## V.   CONCLUSION

For the above stated reasons and the reasons in Defendants' Motion, the Complaint should be dismissed with prejudice.

Dated: October 15, 2025                                COOLEY LLP


By:  _/s/ Tijana M. Brien_
         Tijana M. Brien

Attorneys for Defendants
Nextdoor Holdings, Inc. and Sarah J. Friar

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

REPLY ISO MTD SECOND AMENDED
CLASS ACTION COMPLAINT
CASE NO. 5:24-CV-01213-EJD