UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANKIE J. ADAMO,<br><br>Plaintiff,<br><br>v.<br><br>NEXTDOOR HOLDINGS, INC., et al.,<br><br>Defendants. | Case No.   5:24-cv-01213-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 86 |

Before the Court is Defendants Nextdoor Holdings, Inc. ("Nextdoor") and Nextdoor CEO Sarah Friar's ("Friar") (collectively, "Defendants")[1] second motion to dismiss Plaintiff Frankie Adamo's ("Plaintiff") Second Amended Complaint ("SAC") pursuant to Federal Rule of Procedure 12(b)(6). Mot., ECF No. 86; SAC, ECF No. 85. This motion is fully briefed. Opp'n, ECF No. 89; Reply, ECF No. 91.

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **GRANTS** Defendants' motion to dismiss with prejudice.

I.  **BACKGROUND**

Plaintiff brings this securities class action alleging that Friar made material misrepresentations and omissions about Nextdoor's projected profitability following its acquisition. *See* SAC.

On May 19, 2025, the Court granted Defendants' first Rule 12(b)(6) motion to dismiss

---

[1] Plaintiff dropped all other Defendants previously named in the First Amended Complaint.
Case No.:   5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS
1

1  with leave to amend ("Prior Order"). Prior Order, ECF No. 80. The Court dismissed almost all

2  challenged statements for lack of standing and the remaining statement—an announcement Friar

3  made during an earnings call on May 10, 2022—for failure to show that it was false or misleading.

4  Friar's May 10, 2022, statement was alleged as follows:

> Our community is active and becoming increasingly active. Our product strategy in 2022 is centered on strengthening engagement through building an active valued community. It's working. In Q1, over 50% of neighbors were weekly active and over half of weekly active users were active daily, highlighting that as we move neighbors from onboarding to monthly to weekly, they have a high propensity to make Nextdoor a daily use case.

*Id.* at 6.

Plaintiff originally argued that this statement was false and misleading because Defendants led investors to believe that "active users" were defined as "on-platform" users who interacted with the Nextdoor platform. But in fact, "active users" also included "off-platform" users who merely opened Nextdoor's emails. The Court disagreed with Plaintiff's characterization, finding that Defendants clearly defined "active users" in their materials as including those who merely opened emails, such that no reasonable investor could believe Friar's statement excluded this category of users. Specifically, the Prior Order provides:

> Though this practice of defining people who merely open their email as "active users" may have been highly unusual in the industry, Plaintiff has not alleged facts to support his allegation that it would have been unexpected by investors because Nextdoor explicitly defines an "active user" as a person who "opens our application, logs on to our website, or engages with an email with monetizable content at least once during a defined . . . period." Regardless of what is typical in the industry, Nextdoor's explicit definition of "active user" eliminates any reasonable expectation that the term could mean something else.

*Id.* at 14 (citations omitted).

The Court granted Defendants' motion to dismiss with leave to amend. Plaintiff filed the SAC on June 16, 2025, dropping several defendants, abandoning all statements dismissed on standing grounds, and challenging only Friar's remaining May 10, 2022, statement. Now Plaintiff alleges that investors were misled, not by the *definition* of "active users," but by the *proportion* of

Case No.: 5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS
2

1  "active users." Plaintiff contends that Friar's statement implied virtually all "active users" were
2  on-platform users, when in fact about half of the users were individuals who simply opened
3  emails. Defendants subsequently filed the present motion to dismiss.[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Twombly*, 550 U.S. at 556–57.

At the motion to dismiss stage, the Court must read and construe the complaint in the light most favorable to the non-moving party. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). The Court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). However, courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on . . . judicial experience and common sense." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)) (internal quotation marks omitted).

In addition to Rule 8's requirements, fraud cases are also governed by the heightened pleading standard of Rule 9(b). *See* Fed. R. Civ. P. 9(b). A plaintiff averring fraud or mistake

---

[2] The Court also grants Defendants' unopposed request for judicial notice. ECF No. 87. The Court previously found many of these exhibits appropriate for judicial notice in its Prior Order, and the additional exhibits—SEC filings, investor presentations, and analyst reports—similarly satisfy Federal Rule of Evidence 201.

Case No.: 5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS
3

1    must plead with particularity the circumstances constituting fraud, but malice, intent, knowledge
2    and other conditions of the mind may be averred generally. *Id.* Particularity under Rule 9(b)
3    requires the plaintiff to plead the "who, what, when, where, and how" of the misconduct alleged.
4    *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy*
5    *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Securities fraud claims must also satisfy the
6    pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), which states
7    that the complaint "shall specify each statement alleged to have been misleading, the reason or
8    reasons why the statement is misleading, and, if an allegation regarding the statement or omission
9    is made on information and belief, the complaint shall state with particularity all facts on which
10   that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA also requires a plaintiff to state with
11   particularity facts giving rise to a strong inference of a defendant's scienter. See id. § 78u-4(b)(2).
12   If a motion to dismiss is granted, "a district court should grant leave to amend even if no
13   request to amend the pleading was made, unless it determines that the pleading could not possibly
14   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)
15   (internal quotation marks omitted).

### III.   DISCUSSION

As detailed in the Prior Order, to state a claim under the Exchange Act § 10(b) and Rule 10b-5, plaintiffs must allege facts sufficient to establish: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (internal quotation marks omitted).

The Court finds Plaintiff failed to cure the deficiencies identified in the Prior Order regarding the first element—a materially false or misleading statement or omission. The Court further finds Plaintiff fails to allege facts sufficient to show scienter and loss causation.[3]

---

[3] Because Plaintiff fails to plead a primary violation of the Exchange Act, his § 20(a) claim against Friar also necessarily fails. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir.

### A. Material Misrepresentation or Omission

The only remaining statement challenged in the SAC is Friar's May 10, 2022, statement:

> Our community is active and becoming increasingly active. Our product strategy in 2022 is centered on strengthening engagement through building an active valued community. It's working. In Q1, over 50% of neighbors were weekly active and over half of weekly active users were active daily, highlighting that as we move neighbors from onboarding to monthly to weekly, they have a high propensity to make Nextdoor a daily use case.

SAC ¶ 66. But Plaintiff's new argument—that this statement misled investors regarding the *proportion* of on-platform active users, rather than the *definition* of "active users"—is unsupported by the facts alleged.

To sufficiently allege a material misrepresentation or omission under § 10(b), Plaintiff must specify each allegedly misleading statement and the reasons why each statement is misleading. *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005), *abrogation on other grounds recognized by Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023); *see also* 15 U.S.C. § 78u-4(b)(1). "A statement that is literally true can be misleading and thus actionable under the securities laws" if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Plaintiff contends that the May 10, 2022, statement satisfies this standard because Friar implied that virtually all of its active users were on-platform users in three ways. First, Friar's statement represented that Nextdoor's "active users" were all participants in the Nextdoor "community." According to Plaintiff, communities are generally defined by members who interact, therefore Friar implied that its "active users" were comprised almost entirely of users who interacted with each other on the platform—not off-platform passive email recipients. Second, Friar references "active users" as an "active valued community." In other marketing materials, Nextdoor defined an "active valued community" by using the phrases "involved in the

---

2012).
Case No.: 5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS

community," "communicate," and "give and get help."  Plaintiff argues these phrases also connote on-platform activity.  Third, Friar stated that "active users" who are "active daily" "make Nextdoor a daily use case."  None of these terms were defined, but in ordinary parlance, Plaintiff argues that "make Nextdoor a daily use case" means visiting and engaging with the Nextdoor platform on a daily basis, not just checking emails daily.  Plaintiff also references similar statements to contextualize his argument that Defendants "primed" investors to believe that most of the "active users" were on-platform users.

The Court finds these facts insufficient to show Friar's statement was false or misleading.  Vaguely describing "active users" as a "community," and using phrases such as "communicate," "give and get help" and "daily use case," does not reasonably imply any particular *percentage* of on-platform verse off-platform users.  As discussed in the Prior Order, reasonable investors would have known that "active user" includes both on- and off-platform users, and there are no statements in the SAC that could reasonably be understood to imply *how many* of the "active users" referenced by Friar were on-platform users.  If any investor did in fact believe, as Plaintiff contends, that "the proportion of active users that were purely off-platform was negligible," this belief is not sufficiently supported by these facts.

Ultimately, the Court provided Plaintiff an opportunity to amend the complaint and cure the identified deficiencies with additional facts, but instead, Plaintiff largely relies on a different interpretation of the previous allegations that the Court found wanting.  Given Plaintiff's failure to allege new facts sufficient to cure the deficiencies explicitly identified in the Prior Order, the Court finds that "the pleading could not possibly be cured by the allegation of other facts," *Lopez*, 203 F.3d at 1127, and **GRANTS** Defendants' motion to dismiss without leave to amend.

### B. Remaining Elements

But even if Plaintiff could plead facts showing how Friar's statement misled investors as to the percentage of on-platform verse off-platform users, the Court notes that Plaintiff also fails to sufficiently plead scienter and loss causation.

Case No.: 5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS

6

### 1. Scienter

To show scienter, Plaintiff must allege "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (citation omitted); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (plaintiff must allege facts showing that "defendants believed that they were making false or misleading statements"). The required inference of scienter "need not be irrefutable . . . or even the most plausible," and no "smoking-gun" is required. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). A "strong inference" is merely one that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* In other words, "a tie goes to the Plaintiff." *Maiman v. Talbott*, No. SACV 09-0012AGANX, 2010 WL 11421950, at *5 (C.D. Cal. Aug. 9, 2010).

Plaintiff argues that three allegations show Defendants knew that half of the "active users" were in fact off-platform users. First, Friar received daily, weekly, and monthly "executive reports" with data including the percentage of users that were on-platform verses off-platform. Second, Defendants' employees voiced concerns during weekly company meetings that the inclusion of off-platform users in the definition of "active users" was problematic, and Friar attended these meetings. Third, knowledge of how many "active users" were off platform was "simply the knowledge of the core operations" of Nextdoor. Opp'n 20 (citing *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1013 (N.D. Cal. 2017)).

The Court finds these allegations lack the necessary particularized facts regarding Friar's state of mind. First, Plaintiff's allegations regarding the executive reports are insufficient to infer scienter. Plaintiff pleads generally that, according to a former employee, all C-level executives received these executive reports, and the reports included data regarding the percentage of on-platform verse off-platform users. SAC ¶¶ 54, 73. But Plaintiff does not allege any facts to show whether, and when, the reports revealed the alleged 50/50 split in users engaged with the platform, or whether Friar had access to any report revealing this information prior to her May 10, 2022,

Case No.: 5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS

7

1  statement. *See In re Solarcity*, 274 F. Supp. 3d at 1008 ("To meet this pleading requirement, the
2  complaint must contain allegations of specific contemporaneous statements or conditions that
3  demonstrate the intentional or the deliberately reckless false or misleading nature of the statements
4  when made.") (internal quotation marks omitted) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432
5  (9th Cir. 2001), *abrogation on other grounds recognized by Glazer*, 63 F.4th at 766). Second,
6  employee concern regarding the *definition* of "active users" is no longer tied to the current theory
7  of the case—Plaintiff now alleges "not that Defendants misrepresented their *definition* of 'active
8  user' as including both on- and off-platform users, but rather that they misled investors about the
9  *proportion* of those 'active users,' so defined, who were on-platform." Opp'n 11 (emphasis in
10 original). Finally, Plaintiff's reliance on the "core operations" doctrine is unavailing. This
11 doctrine may be used to support an inference of scienter where the nature of the fact is of "such
12 prominence that it would be 'absurd' to suggest that management was without knowledge of the
13 matter." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 539–40 (9th Cir. 2024). For example, one court
14 found that it would be "absurd" to suggest that management of an airline experiencing significant
15 operational challenges "would not be aware of pervasive maintenance issues" that contributed to
16 these challenges. *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1261 (D. Nev. 2019).
17 There are no similar facts alleged here to suggest that the ratio of on-platform verse off-platform
18 users is a fact so significant to Nextdoor's operations as a neighborhood social media site.

### 2. Loss Causation

To plead loss causation, Plaintiff must "show[] that the share price fell significantly after the truth became known." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 953 (9th Cir. 2023) (internal quotation marks omitted). Plaintiff need only "provide enough factual content to give the defendant 'some indication of the loss and the causal connection that the plaintiff has in mind,'" which "should not prove burdensome." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Plaintiff alleges that two partial corrective disclosures revealed that Nextdoor's users were not as genuinely engaged in the platform as Nextdoor implied. First, on August 9, 2022, Nextdoor

Case No.: 5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS
8

reported that its ARPU growth had turned negative in the quarter, contracting by 6% year-over-year. SAC ¶ 81. This news caused Nextdoor stock to fall by 25%. *Id.* ¶ 82. Second, on November 8, 2022, Nextdoor revealed that the Company's quarterly ARPU growth was contracting by 12% compared to the prior year quarter. *Id.* ¶ 83. On this news, the price of Nextdoor Class A common stock fell approximately 11%. *Id.* ¶ 84.

Though Plaintiff alleges these disclosures were "corrective" of Friar's May 10, 2022, statement because they revealed that Nextdoor's users were in large part off-platform users, this conclusion is unsupported by the facts. There are no allegations that anyone—i.e., Nextdoor, news outlets, investors, or other market participants—attributed Nextdoor's disclosures to issues with its "active users" metrics, and no facts to show why the Court should reach this conclusion. In other words, as pled, there is no indication that the stock drops following these two disclosures were "caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated facts." *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 770 (N.D. Cal. 2020).

\* \* \*

Accordingly, even assuming Plaintiff could sufficiently plead a materially false or misleading statement or omission, the Court also **GRANTS** Defendants' motion to dismiss for failure to plead scienter and loss causation.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' second motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: November 20, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-01213-EJD
ORDER GRANTING MOTION TO DISMISS
9